J-A04042-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.T.J.F. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: PHILADELPHIA | : | |
| DEPARTMENT OF HUMAN SERVICES | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1770 EDA 2021 |

Appeal from the Order Entered August 4, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000157-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: D.T.J.F., A | : | IN THE SUPERIOR COURT OF |
| MINOR | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: PHILADELPHIA | : | |
| DEPARTMENT OF HUMAN SERVICES | : | |
| | : | |
| | : | |
| | : | No. 1771 EDA 2021 |

Appeal from the Decree Entered August 4, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000710-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: D.D.J.F., A | : | IN THE SUPERIOR COURT OF |
| MINOR | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: PHILADELPHIA | : | |
| DEPARTMENT OF HUMAN SERVICES | : | |
| | : | |
| | : | No. 1772 EDA 2021 |

Appeal from the Order Entered August 4, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000159-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: D.D.J.F., A | : | IN THE SUPERIOR COURT OF |
| MINOR | : | PENNSYLVANIA |

|  | : |  |
|---|---|---|
|  | : |  |
| APPEAL OF: PHILADELPHIA | : |  |
| DEPARTMENT OF HUMAN SERVICES | : |  |
|  | : |  |
|  | : |  |
|  | : | No. 1773 EDA 2021 |

Appeal from the Decree Entered August 4, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000711-2019

BEFORE: LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

CONCURRING/DISSENTING MEMORANDUM BY LAZARUS, J.:

**FILED JULY 8, 2022**

Mindful of our deferential standard of review in termination matters, I concur with the Majority's decision to affirm the trial court's order with respect to Mother. The trial court was in the best position to determine issues of credibility, and its findings are supported by the record. However, because the record reflects that Father has made no effort to engage in his permanency goals throughout the life of this case, I note my dissent as to the court's order denying termination of Father's parental rights.

I agree with the Agency and the Guardian *ad litem* that Father's rights should have been terminated pursuant to sections 2511(a)(1) and (2). Father has been consistently non-compliant with his permanency goals, **see** N.T. Termination Hearing, 8/4/21, at 32; failed to attend visitation (including virtual visitation scheduled by the Agency), **see id.** at 52-53; and repeatedly failed to respond to outreach by the Agency to schedule drug screens and parenting classes as ordered by the court. **See id.** at 50-52. Moreover,

- 2 -

despite being served with notice of the termination hearing, Father failed to appear in court, as he has throughout the life of this case.

In support of its decision not to terminate Father's parental rights, the court stated the following:

> The record shows that prior to the COVID-19 [p]andemic, Father had been consistently visiting with [Children] throughout the life of the case and that [Children] were bonded with both parents. (DHS Petition[,] 04/14/2021, Exhibit A ¶[¶] ooo, qqq). The record also revealed that many of Father's visits have been disrupted due to interference from [parental grandmother]. N.T. [Termination Hearing,] 08/04/2021[,] at 44-47). Additionally, the testimony presented at the August 4, 2021 hearing revealed that Father was recently interested in engaging meaningfully with his permanency plan objectives, but had perhaps not received the necessary support from the CUA [c]ase [m]anager[,] who testified that she has not attempted any outreach to Father since before the prior court date. (***Id.*** at 33, 53). Finally, this [c]ourt recognizes that the COVID-19 [p]andemic has presented incredible challenges to many of the families already struggling to reunify. Given Father's stated desire to engage more meaningfully, this [c]ourt believes that[,] with additional time and services, Father may be able to get back on track with his permanency plan objectives and avoid losing his parental rights altogether.

Trial Court Opinion, 9/30/21, at 16-17.

The factual findings relied upon by the trial court are either insufficient as a matter of law or unsupported by the record. First, while Father did, earlier in the life of the case, engage in visitation with Children, caseworker Cody testified at the termination hearing that, as of some point in 2020, Father told her "[h]e wanted to **start his visits** and he wanted to participate in parenting through the ARC." N.T. Termination Hearing, 8/4/21, at 33 (emphasis added). However, despite the fact that Children were residing with his own mother,

Father failed to follow through with visitation and, to Cody's knowledge, has not had any contact with Children. *See id.*

Second, while the trial court asserted that "many of Father's visits have been disrupted due to interference from [paternal grandmother]," Trial Court Opinion, 9/30/21, at 17, citing N.T. Termination Hearing, 8/4/21, at 44-47, a review of the portion of the transcript cited by the trial court in support of this finding reveals that it was actually Mother's visits, not Father's, that were subject to interference by paternal grandmother.[1] *See* N.T. Termination Hearing, 8/4/21, at 44-47 (discussing grandmother's interference with Mother's visits). As such, the court's finding of fact lacks support in the record.

Third, the fact that Father, at some point in the year prior to the termination hearing, expressed an "interest" in resuming his visitation with

---

[1] The following exchange occurred between Maureen F. Pie, Esquire, counsel for Mother, and the Agency's case worker:

> MS. PIE: Okay. In the history of the case for these two children, grandmother has been admonished by the Court not to interfere with mom's visits; isn't that correct?
>
> MS. CODY: Yes.
>
> MS. PIE: Okay. And, even after that, she didn't fully cooperate; isn't that correct?
>
> MS. CODY: Yes.

N.T. Termination Hearing, at 47.

Children is insufficient, as a matter of law, to demonstrate an intent to undertake a parental role.

> To be legally significant, . . . [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. **The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question**.

*In re D.J.S.*, 737 A.2d 283, 286 (Pa. Super. 1999) (emphasis added). Here, Father, has failed to demonstrate either his intent or his ability to parent Children.

Finally, the court placed a substantial portion of the blame for Father's failure to engage on the hardships engendered by the COVID-19 pandemic. While I certainly agree that COVID-19 has caused logistical and other difficulties for parents seeking to reunite with their children, the record demonstrates that Father has made minimal to no effort throughout the life of this matter. He failed to achieve any of his permanency goals and was consistently absent from both Agency meetings and permanency review hearings. Indeed, of the twelve permanency review hearings held during the life of this case, Father attended only two. *See* Petition for Involuntary Termination, 4/14/21, at Exhibit A. As this Court has previously stated:

> The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following

intervention by the state may properly be considered unfit and have his parental rights terminated. . . .

**Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem**, in order to maintain the parent-child relationship to the best of his [] ability, even in difficult circumstances. **A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs**.

*In re Z.P.*, 994 A.2d 1108, 1118–19 (Pa. Super. 2010) (internal citation and quotation marks omitted; emphasis added).

Here, Father has utterly failed take any affirmative action, or to exercise any firmness in the face of obstacles, necessary to preserve his parental rights. It is abundantly clear from the record in this matter that: (1) for a period of six months immediately preceding the filing of the petition, Father has refused or failed to perform parental duties and (2) Father's continued incapacity, neglect, or refusal has caused Children to be without essential parental care, control, or subsistence necessary for their physical or mental well-being and Father has demonstrated that he either cannot or will not remedy the conditions and causes of the incapacity, neglect, or refusal. *See* 23 Pa.C.S.A. §§ 2511(a)(1) & (2). Accordingly, I would reverse the order of the trial court as it pertains to Father and remand for the entry of an order terminating Father's parental rights.